**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CENTRAL PROGRESSIVE BANK**                    **CIVIL ACTION**

**VERSUS**                                       **NO. 08-4035**

**TIMOTHY S. HARVEY, ET AL**                     **SECTION B(1)**


## ORDER AND REASONS

Before the Court are two Motions to Dismiss the claims of Central Progressive Bank ("CPB") for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), one brought by Defendant Marne F. Vorndran ("Ms. Vorndran")(Rec. Doc. No. 13) and one by the remaining fourteen Defendants ("Harvey, et al")(collectively "Defendants"). (Rec. Doc. No. 11). Defendants Harvey, et al additionally seek to dismiss for improper venue (presumably pursuant to Federal Rule of Civil Procedure 12(b)(3)), or in the alternative, to transfer. *Id.* Ms. Vorndran's Supplemental Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction also offers argument in favor of transfer. (Rec. Doc. No. 24 at 5). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Motions to Dismiss or Alternatively to Transfer (Rec. Doc. Nos. 11, 13) are **DENIED**.

**BACKGROUND**

Plaintiff Central Progressive Bank ("CPB") brought the instant case in the 22nd Judicial District Court of Louisiana, Parish of St. Tammany, seeking to enforce continuing commercial guarantees signed by each of the Defendants in connection with a mortgage loan agreement between CPB and Sterling Generations, LLC ("Sterling") for a property located in Panama City Beach, Florida. The case was subsequently removed to this Court. CPB is a Louisiana bank with its principal place of business in Lacombe, Louisiana and with all of its branches located in Louisiana. Sterling, a Florida limited liability company, is not a party to this suit but is a defendant in a separate foreclosure action on the property at issue brought by CPB in Florida.

All Defendants are either residents of Florida or Ohio. Marne Vorndran is a Florida resident who previously lived (and signed the guaranty) in Ohio. Timothy Harvey and Robert Tucker are residents of Ohio. Century Development Group, Inc, is a corporation organized and with its principal place of business in Ohio; WOW Investors, LLC. is organized in Florida with its principal place of business in Ohio. Jaymar Holdings LP is organized in Tennessee with its principal place of business in Florida. DP Rossi Investments, Inc., Tapestry Park Land Company, and Cornerstone Development Company are organized and have principal places of business in Florida. The remaining Defendants, Daniel Rossi, Jay

Vorndran, Mark Tanney, Susan Tanney, John McNeil, and Davage Runnels, are residents of Florida.

On December 29, 2005, Sterling executed a Promissory Note made payable to CPB in the original principal sum of $15,000,000.00. The Promissory Note provided for monthly interest payments at the initial rate of 8.25% with the principal and any accrued interest to be paid on or before December 29, 2006. Also on December 29, 2005, CPB and Sterling entered into a Business Loan Agreement providing for the purpose, terms and conditions of the loan to be provided as represented by the Promissory Note. On January 5, 2007, CPB and Sterling entered into a Change in Terms Agreement whereby the maturity date of the Promissory Note was extended to December 29, 2007, a principal reduction of $1,000,000.00 was due, and the interest rate was increased. Changes were further made to the date of maturity by way of a Loan Extension Agreement executed on December 9, 2007.

At the time the loan was made on December 29, 2005, Sterling granted a mortgage in favor of CPB on property situated in Panama City Beach Florida as security. As further security for the Note, Defendants executed Commercial Guaranties wherein Defendants individually obligated themselves to be liable in solido, with Sterling and with the other guarantors, for sums[1] due under the

_____

[1]Defendants McNeil and Runnels obligated themselves to be liable up to and including the sum of $5,000,000.00, while the remaining Defendants obligated themselves to be liable up to and including $15,000,000.00.

Promissory Note, including principal, interest, and attorney's fees. The Commercial Guaranties are governed by Louisiana law, and provide for payment to be made to CPB at 29092 Krentel Road, Lacombe, Louisiana 70445. The Guaranties further provide that they are continuing guaranties which provide for payment of the full amount due now or arising in the future.

The Promissory Note, Business Loan Agreement, various Change in Terms Agreements (including the Loan Extension Agreement) and Commercial Guaranties (collectively the "Loan Documents") were all prepared by CPB or counsel for CPB in Louisiana and were ultimately delivered to CPB in Louisiana after being signed by all Defendants and Sterling.[2] All payments made under the Commercial Guaranties were made or required to be made to CPB's offices in Louisiana.

Sterling made payments on the Promissory Note to CPB in the amount of $250,000.00 per payment on April 12, 2007 and again on August 1, 2007. No further payments were made, and the Promissory Note matured on February 29, 2008. The principal balance due on the Promissory Note as of September 30, 2008 was $14,250,000.00.

On or abut June 18, 2008, CPB filed suit against Defendants on the Commercial Guaranties in the 22nd Judicial District Court, St.

---

[2]Marne Vorndran signed the guaranty in Ohio, while the remaining Defendants signed guaranties in Florida. Those Defendants signing in Florida argue that they delivered the guaranties to a CPB representative, Douglas Ferrer. (See Rec. Doc. 18 at 10). CPB counters that the ultimate destination of the documents was Louisiana and points out that the address listed on the Guaranties is CPB's principal office in Lacombe, Louisiana. *Id.*

Tammany Parish, Louisiana.  The suit was removed to this Court on July 28, 2008.

Defendants argue that this Court lacks personal jurisdiction over them and that venue in the Eastern District of Louisiana is improper.  Defendants specifically argue that they are not subject to personal jurisdiction in Louisiana because they are residents of either Ohio or Florida who have not had enough contact with Louisiana to satisfy the jurisdictional requirements for minimum contacts.  Defendants assert that signing the guarantees did not establish minimum contacts within Louisiana sufficient to subject them to personal jurisdiction under Louisiana Revised Statute 13:3201 (the "long-arm statute") and Amendment 14 to the United States Constitution.  Defendants also claim that in light of the foreclosure action against Sterling pending in Florida, the location of the property, and the majority of the Defendants' citizenship in Florida, public policy favors a transfer of the case to that state.  Defendants also assert that they neither solicited the business of CPB nor requested that credit be issued to them in the State of Louisiana.  (See Defendant's Affidavits, Rec. Doc. Nos. 11, 13).  Defendant Marne Vorndran, a realtor who assisted with pre-sale activities related to the Panama City property, asserts that she had no involvement with Sterling's negotiations with CPB and only signed the guarantee at the direction (and/or possible coercion) of her then-husband and business partner.

Finally, Defendants argue that Florida has a greater interest in this litigation than Louisiana and that it would be a substantial burden on and unfair to Defendants to have to litigate in this forum.

Plaintiff CPB argues personal jurisdiction over all Defendants and venue in the Eastern District of Louisiana are proper. CPB argues that there is specific jurisdiction over all Defendants because they executed Commercial Guaranties in which they obligated themselves to joint and several liability under Louisiana law[3] to a Louisiana bank. Additionally, the guaranties are continuing in nature and state that payments are to be made to CPB in Louisiana. CPB also alleges that Defendants personally sought a loan from CPB. (Rec. Doc. Nos. 18-2 at 12 and 17 at 14). Plaintiff further argues that Louisiana has a strong interest in protecting its corporate citizens who allegedly sustain injury and therefore has a substantial interest in this case. In response to the defendant's venue arguments, the plaintiff asserts that CPB is located in this district and that all payments on the guaranties were to be made in this district. Further, plaintiff's entire operation is located in Louisiana and many of the witnesses will be Louisiana citizens, including Plaintiff and its employees. Plaintiff argues that changing venue would simply shift the burden of the litigation from

---

[3] Neither party specifically addresses the existence of an explicit forum selection clause favoring the laws of Louisiana present in every Guaranty and all other contract documents currently on the record. (See Rec. Doc. No. 18 at Exhibit A (Promissory note), Exhibit B (Mortgage), and Exhibit C (Commercial Guaranty)).

Defendants to the plaintiff.

**DISCUSSION**

## A.  Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal for lack of personal jurisdiction.  The Plaintiff bears the burden of establishing jurisdiction over a nonresident defendant.  *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir. 1996).  To establish personal jurisdiction, a plaintiff need only present *prima facie* evidence. *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 170 (5th Cir. 2006). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  This Court must assess whether the exercise of personal jurisdiction over a nonresident defendant comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution and is in accordance with the Louisiana long-arm statute.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  As Louisiana's long arm statute extends personal jurisdiction on any basis consistent with the Constitution, the Court need only consider the limitations of the Due Process Clause. See La. Rev. Stat. Ann. §13:3201(B).

The Due Process requirement is satisfied where "(1) that defendant has purposefully availed himself of the benefits and

7

protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific personal jurisdiction exists when the defendant's contacts with the forum "arise from, or are directly related to, the cause of action" and requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Revell*, 317 F.3d at 470; *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). Specific jurisdiction is present when a nonresident defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). The "minimum contacts" within the forum state must be those such that the nonresident party "should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

That plaintiff entered into a contract with an out-of-state party cannot by itself establish personal jurisdiction. *Burger King,* 471 U.S. at 478. "But, when a nonresident defendant

voluntarily enters into a contract which contemplates business activity by a forum-state entity foreseeable to the nonresident defendant, such action establishes a minimum contact sufficient for a valid exercise of jurisdiction over the nonresident defendant." *Consolidated Cos., Inc. v. Kern,* 2000 WL 1036186, at *3 (E.D.La. 2000) (*citing Miss. Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir.1982)). In a breach of contract case, among the factors that a court should consider in determining whether there has been purposeful availment are prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Stuart,* 772 F.2d at 1193 (citing *Burger King,* 471 U.S. at 479). Louisiana courts have also consistently found minimum contacts sufficient to establish jurisdiction in Louisiana over suits for payment of a loan by a Louisiana bank against an out-of-state borrower or guarantor. *See Koeniger v. Lentz,* 450 So.2d 680, 681 (La. App. 4 Cir. 1984); *American Bank and Trust Co. v. Sunbelt Environmental Systems, Inc.,* 451 So.2d 1111, 1114 (La. App. 1 Cir. 1984).

This Court has previously addressed the issue of personal jurisdiction in cases involving continuing guaranties such as those considered here. *See Central Progressive Bank v. McNeil,* No.08-4036, 2009 WL 650180 (E.D.La. March 12, 2009)(Engelhardt, J.); *Central Progressive Bank v. Kuntz*, No. 08-4147, 2008 WL 5264260 (E.D.La. December 17, 2008)(Barbier, J.); *Consolidated Companies,*

*Inc. v. Kern*, No.99-2704, 2000 WL 1036186 (E.D.La. July 25, 2000)(Fallon, J.)(minimum contacts established when non-resident defendant voluntarily executed a Guaranty in favor of a Louisiana entity to induce the Louisiana entity to provide credit); and *Asean Homes, Inc. v. Miller*, No. 99-294, 1999 WL 1102427 (E.D. La. Dec. 3, 1999)(Clement, J.)(finding personal jurisdiction over non-resident defendant who had sought out a loan from a Louisiana entity, entered into an agreement to borrow money from the Louisiana entity and had a continuing business relationship with such entity, money transferred from Louisiana to defendant, and the Guaranty contained a Louisiana choice of law provision). In all four cases the Court found that minimum contacts with Louisiana were established when a non-resident defendant voluntarily executed a Guaranty in favor of a Louisiana entity to induce the Louisiana entity to provide credit.[4] The two most recent of these cases, *Central Progressive Bank v. McNeil* and *Central Progressive Bank v. Kuntz*, involve the same Plaintiff as the present case, default on a loan secured by land, and non-resident guarantors.[5]

In the instant case, just as in *McNeil*, all Defendants purposely availed themselves of the privileges of conducting business in Louisiana. They knowingly and voluntarily entered into

---

[4]*See Kuntz*, 2008 WL 5264260 at *3 for a detailed discussion of *Consolidated Companies* and *Asean Homes*.

[5]*McNeil* involves land in Mississippi and guarantors domiciled in Florida. *Kuntz* involves land in Florida and Ohio resident guarantors.

an ongoing relationship with a Louisiana business entity through their execution of continuing guaranties. The nature of a continuing guaranty is such that it necessarily contemplates regular and ongoing business for the term of the loan[6] sufficient to establish minimum contacts. Furthermore, as in *Kuntz*, all loan documents were ultimately delivered to Louisiana and all payments on these agreements and commercial guaranties that are subject to this suit were to be made to CPB in Louisiana. Defendants signed loan documents that were prepared by CPB and its lawyers and that are governed by Louisiana law. Defendants are being sued on these guaranties and should have anticipated being haled into court in Louisiana. The Court finds that Defendants have sufficient minimum contacts with Louisiana and that those contacts specifically relate to the instant cause of action.[7]

Having established that the requisite minimum contacts between the defendants and this state exist, "the burden of proof shifts to the defendant[s] to show that the assertion of jurisdiction is unfair and unreasonable." *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). The Fifth

---

[6]See generally Kimberly Castelaz and Eric C. Surette, "Continuing or restricted guaranties," 38 Am Jur 2d Guaranty § 20 (West Group 2008) ("A continuing guaranty is... simply a divisible offer of a series of separate unilateral contracts, and contemplates a series of transactions between the debtor and the creditor rather than a single debt,58 and each transaction creates a new contract.")

[7]While Defendant Marne Vorndran has claimed to have signed a guaranty only at the direction of her ex-husband and business partner, the terms of her guaranty were no different than those of the other parties; nor has she offered any evidence of coercion or lack of personal knowledge regarding the terms of the agreement.

Circuit has recognized that it is rarely the case that jurisdiction is unfair after minimum contacts have been established. *Wein Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir. 1999). "The defendant must make a 'compelling case.'" *Id.*(*quoting Burger King,* 471 U.S. at 477). In making a determination of whether the exercise of jurisdiction is fair and reasonable, courts consider: "the burden on the defendant having to litigate in this forum; the forum states's interests in the lawsuit; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Id.*

The Court is unconvinced by arguments that litigation in Louisiana is inconvenient to Defendants as the same argument could be made by Plaintiff were the suit in Ohio or Florida. Furthermore, Louisiana has a strong interest in providing a forum for litigation concerning a contract governed by its laws and affecting one of its corporate citizens that alleges it is owed money by Defendants. This Court also echoes the sentiment of Judge Fallon as quoted in *McNeil*: "[B]y its very nature, a guaranty symbolizes the willingness of the guarantor to 'stand in the shoes' of the guaranteed company or individual. A guaranty would be worthless if the guarantor could not be held responsible for the guaranteed obligations." *McNeil*, 2009 WL 650180 at *4 (*quoting Kern,* 2000 WL 1036186 at *5). Taking all these factors into

12

account, the Court finds it is both fair and reasonable to exercise jurisdiction over Defendants.

**B.   Venue**

Fed. R. Civ. P. 12(b)(3) provides for dismissal of claims for improper venue.   Where jurisdiction is based on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a).  Venue is also proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *Id*.   The place of performance provides proper venue in an action for breach of contract. *See American Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981). In *Asean Homes*, this Court concluded venue was proper in the Eastern District of Louisiana because the money the defendant failed to repay was originally paid out to the defendant from a bank in New Orleans.

In the present case, a substantial part of the events giving rise to the claim occurred in the Eastern District of Louisiana. Specifically, CPB paid out money from this district and payments under the commercial guaranties was to be made to Plaintiff in Louisiana.  Because this Court can exercise personal jurisdiction

over Defendants and a substantial portion of the events giving rise to the litigation took place in this district, venue is proper.

**C.  Transfer**

A motion to transfer to a more convenient forum is governed by 28 U.S.C. § 1404(a).  Section (a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Courts are given wide discretion in determining whether to transfer a case for the convenience of the parties in the interest of justice.  *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989).

In determining whether transfer is proper under 28 U.S.C. § 1404(a), courts consider both private interest and public interest factors.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981).  The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Piper,* 454 U.S. at 241 n.6.  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the

application of foreign law.  In the Fifth Circuit "the plaintiff's choice of forum is clearly a factor to be considered," though this is neither conclusive nor determinative.  *In re Horseshoe Entertainment,* 337 F.3d 429, 434-35 (5th Cir.2003).  The plaintiff's choice of forum places a "good cause" burden on the defendant who seeks the transfer.  *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir.2008). This "good cause" burden is met when the moving party can "satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* Additionally, the defendant must still make a "convincing showing of the right to have the case transferred since § 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *S. Investors II v. Commuter Aircraft Corp.*, 520 F. Supp. 212, 218 (D.C. La. 1981) (internal citations omitted).

Defendants have failed to show that either the private or public interest factors militate in favor of transferring venue. The contracts that are the basis of this case are with a Louisiana bank and once executed were delivered to the state; therefore documents and witnesses are located in Louisiana.  Many of these Louisiana witnesses, such as CPB's employees, are not parties to the case and therefore would not be within the subpoena power of a district court in Florida.  Although Defendants allege that the

majority of the witnesses are located in Florida, they do not explain who these witnesses are. *See Kuntz*, 2008 WL 5264260 at *6. Nor have the Defendants shown that the dockets of this district are too congested as to cause difficulty in administering the case. Additionally, courts in this state have a special expertise in applying--as is required by the language of the guaranties--the laws of Louisiana. Finally, the Eastern District of Louisiana is the forum chosen by Plaintiffs, and that choice is entitled to some deference. Defendants have failed to demonstrate that a transfer is necessary or that another district is a more convenient forum for the resolution of this lawsuit. Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss or Alternatively to Transfer (Rec. Doc. Nos. 11, 13) are **DENIED**.


New Orleans, Louisiana, this 27th day of March, 2009.


_____

UNITED STATES DISTRICT JUDGE